

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-20-00121-CR

———————————————

BOBBY CARTWRIGHT, Appellant

V.

THE STATE OF TEXAS

On Appeal from Criminal District Court No. 1
Tarrant County, Texas
Trial Court No. 1517428D

Before Sudderth, C.J.; Kerr and Womack, JJ.
Memorandum Opinion by Chief Justice Sudderth

# MEMORANDUM OPINION

## I. Introduction

In a single issue, Appellant Bobby Cartwright complains that the trial court abused its discretion when it concluded that he had voluntarily absented himself from his trial. We affirm.

## II. Background

Cartwright was charged with having committed aggravated robbery with a deadly weapon on or about October 5, 2017, and his indictment included a repeat offender notice with regard to a prior felony conviction.[1]  *See* Tex. Penal Code Ann. § 29.03(b) (stating that aggravated robbery is a first-degree felony); *see also id.* § 12.32 (providing that first-degree felony punishment range is life or 5 to 99 years and up to a $10,000 fine), § 12.42(c)(1) (increasing first-degree felony punishment range for a repeat offender to life or 15 to 99 years and up to a $10,000 fine).  Cartwright made bond pending trial.

Cartwright rejected two plea-bargain offers, and by November 5, 2019, the second day of the guilt-innocence phase of his trial, the State had called five witnesses and had presented over 20 exhibits to the jury.  The State rested its case at 11:01 a.m. that day, and the trial court called for an early one-hour lunch.

---

[1]Cartwright does not challenge the sufficiency of the evidence to support his conviction.

At 12:10 p.m., after Cartwright failed to appear, his attorney reported that he had been unable to locate him. The trial court ordered a 10-minute recess so that bailiffs could perform a thorough search of the floor of the building where the trial was being held and the men's restrooms on that level, as well as a thorough search of the plaza level and the men's restrooms on that level. The trial court also stated that if Cartwright were not found at the end of the 10-minute recess, trial would proceed without him.

At the conclusion of the recess, the trial judge observed that the bailiffs had conducted the search and had not found Cartwright and that defense counsel had also tried to contact Cartwright through family members and by cell phone without success. The trial court determined that Cartwright had voluntarily absented himself. Cartwright's counsel requested a continuance to keep looking for Cartwright, which the trial court denied, and then the guilt-innocence phase of trial resumed with two witnesses for the defense.

The first defense witness testified that he had known Cartwright, who was in his mid-30s, for 12 to 13 years through family. According to the witness, he had seen Cartwright earlier that morning "coming out [of] the courtroom," but he did not know where Cartwright had gone. The second defense witness, Cartwright's stepsister, testified that the last time she had spoken with him had been "right before [she] came in [the courtroom]." She testified as follows:

Q. Where did you talk to him at?

A. Walking through the door when he was smoking his cigarette. And he was like, Sis, would you testify for me? I said, yes.

Q. Okay. So before 15 minutes ago, you didn't know you were going to testify today?

A. No.

Q. Okay. Even though you witnessed what happened that day?

A. Right.

Q. Where is Bobby right now?

A. I have the slightest idea.

Q. He didn't say where he was going?

A. He sa[id] he was going to the restroom.

The jury found Cartwright guilty and the repeat offender allegation true, and the trial court proceeded to the punishment phase of trial. After the State presented testimony from six witnesses, the jury assessed Cartwright's punishment at 26 years' confinement and no fine. The trial court held Cartwright's bond forfeited and issued a warrant, and in the judgment of conviction, his sentence was set to commence "upon apprehension."

Almost a year later, Cartwright was arrested, and his judgment and sentence were amended to reflect that his sentence started August 19, 2020. When asked by the trial court if there was any legal reason he should not be sentenced at that time, his counsel replied, "No legal reason." Cartwright did not file a motion for new trial. *Cf.* Tex. R. App. P. 21.2 (requiring motion for new trial as a prerequisite in a criminal

4

appeal when necessary to adduce facts not in the record), 21.3(a) (stating that one of the grounds for a new trial in a criminal case is when the defendant has been unlawfully tried in absentia); *Larez v. State*, No. 02-01-00421-CR, 2003 WL 253614, at *2 (Tex. App.—Fort Worth Feb. 6, 2003, no pet.) (mem. op., not designated for publication) (holding no preservation of error when, although trial court did not allow appellant to introduce evidence at his sentencing regarding the reasons for his absence at his trial two years before, appellant did not file a motion for new trial alleging that he was unlawfully tried in absentia).

## III. Discussion

Texas Code of Criminal Procedure Article 33.03 states that in all prosecutions for felonies, the defendant must be present in person at the trial, but it also provides that "when the defendant *voluntarily* absents himself after pleading to the indictment or information, or after the jury has been selected when trial is before a jury, the trial may proceed to its conclusion." Tex. Code Crim. Proc. Ann. art. 33.03 (emphasis added); *Moore v. State*, 670 S.W.2d 259, 260–61 (Tex. Crim. App. 1984) (en banc). When the trial court has some evidence before it to support its conclusion that a defendant's absence is voluntary, it does not abuse its discretion by denying a motion for continuance and proceeding with trial as authorized by Article 33.03. *Moore*, 670 S.W.2d at 261. In reviewing a trial court's decision to proceed to trial in the defendant's absence, we may consider not only the evidence before the trial court at the time that it made its ruling but also the evidence that develops subsequent to the

5

ruling, and "[a]bsent any evidence from the defendant to refute the trial court's determination that his absence was voluntary, we will not disturb the trial court's finding." *Id.*; *see also Larez*, 2003 WL 253614, at *1 ("An appellate court will not disturb the trial court's finding that an appellant voluntarily absented himself from trial when the appellant fails to put on any evidence to refute that determination."). This court is bound by the precedent of the Court of Criminal Appeals and has no authority to disregard or overrule its precedent. *Sierra v. State*, 157 S.W.3d 52, 60 (Tex. App.—Fort Worth 2004), *aff'd*, 218 S.W.3d 85 (Tex. Crim. App. 2007).

*Moore* is directly on point in the case before us. *See* 670 S.W.2d at 260–61. In that case, after the appellant appeared in court and entered a plea of not guilty and the jury was selected and sworn, the trial court recessed until the next morning. *Id.* at 260. Although the appellant's counsel told the appellant when and where to appear the next day, the appellant, who was out on bond, did not appear when court resumed the next morning. *Id.* The trial court had the bailiff call the appellant's name in the hall, and the appellant's counsel informed the trial court that he had not spoken with the appellant since the prior evening and did not know his whereabouts. *Id.*

When the trial court decided to proceed with the case under Article 33.03, the appellant's counsel objected and moved for a 24-hour continuance to try to locate the appellant, who had no phone and "no fixed place of abode" and had a history of heart problems. *Id.* The trial court replied that there was no evidence as to why the appellant was absent and that a motion for mistrial would be entertained if the

6

appellant had fallen ill from a heart attack but "right now the Court has nothing before it as to why this case should not continue under Article 33.03." *Id.* The appellant remained absent for the rest of the trial, and the jury found him guilty and assessed his punishment; six months later, he was extradited from Illinois and sentenced. *Id.*

On appeal to this court, the appellant argued that the trial court had erred by continuing the trial in his absence because it had not proceeded far enough in determining whether his absence was voluntary and did not inquire whether the case's circumstances were such that it would be difficult or inconvenient to reschedule the trial with him present. *Moore v. State*, 656 S.W.2d 206, 207 (Tex. App.—Fort Worth 1983), *rev'd*, 670 S.W.2d at 260–61. This court agreed with the appellant. *See id.* The Court of Criminal Appeals did not. *See Moore*, 670 S.W.2d at 260–61.

The Court of Criminal Appeals first noted that the trial court had some evidence before it to support its conclusion that the appellant's absence was voluntary because the appellant had been in court the day before and had been informed by both the court and his attorney when and where to appear. *Id.* at 261. The appellant had been out on bond when he disappeared, and neither the court nor the appellant's attorney had received any communication from him or anyone else to explain his absence on the morning of the trial. *Id.* Although the appellant's attorney had suggested that the appellant might have been taken ill with heart problems, he had

also informed the trial court that a check with most of the area hospitals had been fruitless. *Id.*

The court then observed that we had incorrectly held that we could only consider evidence that was before the trial court at the time it made its ruling in reviewing the validity of the trial court's decision to proceed under Article 33.03, even if evidence substantiating the decision developed thereafter. *Id.* The court concluded that absent any evidence from the defense to refute the determination that the absence was voluntary, the reviewing court would not disturb the trial court's finding. *Id.* The court also declined to require the trial court to first consider factors such as the difficulty of rescheduling the trial, the burden on the State in having to undertake two trials, the inconvenience to the jury, and the likelihood that the trial could soon take place with the defendant present before proceeding with trial under Article 33.03. *Id.*

Here, Cartwright argues that the trial court abused its discretion by concluding that he had voluntarily absented himself from trial when "[t]he record does not contain some evidence of this." However, the record reflects that, like the appellant in *Moore*, Cartwright was out on bond, had appeared for his trial, and was told when and where to appear when court reconvened. *See id.* at 260. Furthermore, Cartwright waited to absent himself until he had seen all of the evidence in the State's case that was presented to the jury, and he was not apprehended until almost a year later. From this circumstantial evidence, it was fair for the trial court to infer that he had freely

8

absented himself. Moreover, under *Moore*, even if the trial court had insufficient evidence before it at the time that it made its ruling, the fact that Cartwright was not apprehended until almost a year later and the lack of any evidence from the defense to refute the trial court's determination that Cartwright's absence was voluntary require us to uphold the finding. *See id.* at 260–61; *Larez*, 2003 WL 253614, at *1–2; *see also Sierra*, 157 S.W.3d at 60. Accordingly, we overrule Cartwright's sole issue.

## IV. Conclusion

Having overruled Cartwright's sole issue, we affirm the trial court's judgment.

/s/ Bonnie Sudderth
Bonnie Sudderth
Chief Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: May 20, 2021